IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Criminal Action No. 10–po–01136–KMT
    (Case No. 11-cr-00018-PAB on appeal to District Court)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES A. BALDWIN,

    Defendant.

_____

# ORDER
_____

This matter is before the court on Defendant's Motion for a New Trial [Doc. No. 50] filed May 10, 2013, and a supplemental pleading containing exhibits referenced in the Motion [Doc. No. 52] ( "Mot.Supp."). The Plaintiff responded [Doc. No. 53], and the Defendant filed a Reply [Doc. No. 54].

A trial to court was held in this matter on November 22, 2010, wherein Defendant was convicted of: failing to comply with the lawful direction of a federal police officer; impeding and disrupting the performance of the official duties of a government employee; and attempting to obstruct a peace officer acting under color of his official authority. (Amended Judgment [Doc. No. 48] filed January 21, 2011.) Defendant filed an immediate appeal to the District Court on January 18, 2011. (*See* Case No. 11-cr-00018-PAB.) On April 23, 2013, the District Court affirmed Defendant's convictions. (Order, *id.* [Doc. No. 16].) On May 2, 2013, the Defendant

appealed his convictions to the Tenth Circuit Court of Appeals. (*See* USCA Case No. 13-1198.) The appeal is currently pending.

### *LEGAL STANDARD*

To prevail on a motion for new trial based on newly discovered evidence, a defendant must prove that:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Redcorn*, 528 F.3d 727, 743 (10th Cir.2008) (citation omitted). A motion for new trial based on newly discovered evidence cannot succeed if the new evidence is merely cumulative or impeaching.[1] *Id*. at 743–44.

Fed. R. Crim. P. 33 authorizes a trial court to grant a new criminal trial of a case if "the interests of justice" so require. *United States. v. Nacchio*, 2010 WL 148271, *1 (D. Colo. 2010) However, Fed. R. Crim. P. 33 also provides, "[i]f an appeal is pending the court may not grant a motion for new trial until the appellate court remands the case." *Id.* at 33(b)(2); *see also United States v. Palmer*, 766 F.2d 1441, 1445 (10th Cir. 1985) (Rule 33 deprives the district court of jurisdiction to grant a motion for a new trial during the pendency of an appeal.). This court therefore lacks jurisdiction to grant Defendant's motion; the court may only entertain the motion

---

[1] Cumulative evidence is additional or corroborative evidence that stands to prove something that has already been established by other evidence. See BLACK'S LAW DICTIONARY 455 (4th ed.1968). Impeachment evidence is evidence adduced to call a witness's credibility into question. *Sala v. United States*, 251 F.R.D. 614, 618 (D. Colo. 2008)

in order to deny it on its merits or to certify its intention to grant the motion to the Court of Appeals. *United States v. Cronic*, 466 U.S. 648, 667, n.42 (1984).

"[I]n deciding a motion for new trial, the court may weigh the evidence and consider the credibility of witnesses in determining whether the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred." *United States v. Evans,* 42 F.3d 586, 593 (10th Cir. 1994). "The Court's broad discretion empowers it to grant relief based not only on the sufficiency *vel non* of the evidence at trial but on any other circumstance that might render the trial 'essentially unfair,' including trial errors." *United States v. D'Amelio,* 636 F. Supp. 2d 234, 238 (S.D.N.Y. 2009). "A motion for a new trial lies within the discretion of the trial court and will not be reversed absent a plain abuse of discretion." *United States v. Kebles,* 2007 WL 2520337, *1-2 (D. Colo. 2007). This Court is tasked not with determining whether the proffered newly discovered evidence is true, but rather with determining whether the interests of justice require a new trial so that this evidence might be presented. *Nacchio*, 2010 WL 148271 at *3.

"District courts view motions for new trials with disfavor." *United States v. Lamy,* 521 F.3d 1257, 1266 (10th Cir. 2008). "[A] litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553 (1984). After a trial, the "verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred." *United States v. Executive Recycling, Inc*., 2013 WL 2236481, *1 (D. Colo. 2013) (quoting *United States v. Sturdivant,* 513 F.3d 795, 802 (8th Cir. 2008) ("[T]he authority to grant a new trial should be exercised sparingly and with caution.")).

*ANALYSIS*

Defendant asserts his entitlement to a new trial based on two documentary items which were provided to him as part of discovery in a civil action he brought subsequent to his convictions. As to both items of newly discovered evidence, the Defendant argues that the evidence would have proved that Commander Lundy was not a "Federal police officer," was not "acting in 'the performance of official duties'" and was not "acting under color of his official authority" when he confronted the Defendant on April 5, 2010, near Gate One of the Denver Federal Center. (Mot. at 2.) The defendant also alleges violation by the government of its obligations to provide him with exculpatory evidence pursuant to *Brady v. Maryland,* 373 U.S. 83, 87 (1963), specifically with respect to the two documents he presents as newly discovered and further because he was not provided with a copy of the "United States Office of Personnel Management's Handbook of Occupational Groups and Families" ("GS Position Handbook").

### *A.   GS Series 080 Position Description.*

The Government provided Commander Lundy's Position Description in discovery which indicated his GS 080 designation. The defendant introduced the Position Description at trial. (*See* Transcript of Bench Trial [Doc. No. 49] (hereinafter "Transcript") at 81:6-24; Resp., Ex. 1-B.) The parties agree that the reference to GS 080 in the Position Description derives from the "United States Office of Personnel Management's Handbook of Occupational Groups and Families" ("GS Position Handbook") which was neither requested by Defendant[2] nor produced by the government in discovery. (Resp. at 4.) The court notes however that the GS Position Handbook, a classification outline of General Schedule white-collar positions in which the series,

---

[2] Defendant alleges only that he repeatedly asked for "all information material to his defense." (Mot at 5.)

title, grade and pay system information for government employees is published and is publicly available in .pdf format on the internet at no cost at http://www.opm.gov. *See generally*, http://www.opm.gov/policy-data-oversight/classification-qualifications/classifying-general-schedule-positions/ (describing the contents of the GS Position Handbook). Therefore, the failure to learn about the contents of the GS Position Handbook and its distinction between GS 080 and GS 083 before trial was caused by the defendant's own lack of diligence and cannot be used as grounds to request a new trial. *Redcorn*, 528 F.3d at 743.

The court also disagrees that the failure to produce this publication to Defendant during discovery is a violation of the government's obligation under *Brady*. First, this publication was as available to Defendant as it was to the government at the time of the trial had either party wanted to explore the grade and series set forth in Commander Lundy's Position Description. Second, the evidence presented at trial was overwhelming that Commander Lundy was a Federal police officer and a peace officer at the time of his contact with Defendant. (Trans. at 237:19-23.) Commander Lundy testified that he worked as a Federal Protective Service officer – a law enforcement officer. (*Id.* at 8:14-15.) He stated that he currently serves as an Area Commander with FPS (*id.* 8:18-24), and that as an Area Commander he is a federal police officer with full authority under 40 U.S.C. § 1315. (*Id.* 10:9-20.) He also testified that he is classified as a peace officer under the Colorado Revised Statutes. (*Id.* 10:21 - 11:1.) Finally, Commander Lundy identified the portion of his position description that authorized him to undertake the types of police activities in which he engaged in connection with Defendant's arrest. (*Id. at* 103:8 - 104:17.) At the time he encountered the defendant, Commander Lundy was wearing a dark colored police uniform with a badge affixed and shoulder patches that said "police." (*Id*. 25:13-

15.) Commander Lundy's vehicle was equipped with red and blue strobe lights in the turn signals, grill lights and across the windshield. (*Id*. 26:3-8.) Commander Lundy activated these emergency lights when he stopped the defendant. (*Id*. 27:21-23.)

This court finds that the position description found in the GS Position Handbook concerning Series 080 designation compared to Series 083 simply recognizes that law enforcement command staff who supervise police officers perform many tasks which are beyond mere police work and provides for a higher pay grade for Commander Lundy than it does for a non-supervisory police officer. The language in the GS Position Handbook does not override the weight of the evidence in this case and does not change the court's findings that on the date in question Commander Lundy was acting as a Federal police officer and a peace officer.

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The GS Position Handbook was not "suppressed" but was at all times publicly available free of charge to the defendant. Further, evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 432, 439 (1995). Here the evidence from the GS Position Handbook does not constitute withheld exculpatory *Brady* material and would not have changed the court's findings with respect to Commander Lundy's status as a Federal police officer and peace officer.

**B.    2005 Draft Guidelines for the Exercise of Law Enforcement Authorities by Officers and Agents of the Department of Homeland Security Under 40 U.S.C. § 1315**

After the Defendant was convicted in his criminal case, he obtained a 2005 Memorandum from the Attorney General to the Secretary of the Department of Homeland Security through the discovery process in a civil action filed by the Defendant related to the April 5, 2010 events. (Mot.Supp. at 15-20.)  This Memorandum included "Guidelines for the Exercise of Law Enforcement Authorities by Officers and Agents of the Department of Homeland Security Under 40 U.S.C. § 1315" (hereinafter "Homeland Officer Guidelines"). (*Id.* at 16-20.)  In part, the Homeland Officer Guidelines suggest that officers complete the Mixed Basic Police Training Program or another approved program prior to being authorized to exercise the powers set forth in 40 U.S.C. § 1315(b)(2). (*Id.* at 16.)  Although this document was not produced in discovery, it is not exculpatory nor would it have even been useful to the Defendant as impeachment evidence.[3]  Commander Lundy, if he had been asked by Defendant, would have confirmed that he had indeed been provided the equivalent training which is suggested by the Homeland Guidelines. (Resp., Ex. 1, Affidavit of Area Commander Kevin L. Lundy.)

Further, the Homeland Officer Guidelines on their face are merely advisory, containing the following disclaimer

> These guidelines are set forth solely for the purpose of internal agency guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any "third party" in any manner. civil or criminal, and they do not place any limitations on otherwise lawful activities of the agency. No provision of these Guidelines shall limit the role of DHS organizational elements' performance of law enforcement activities under existing authorities.

---

[3] As previously stated, newly discovered evidence which is solely impeaching will not support a motion for a new trial. *Redcorn*, 528 F.3d at 743.

(Mot.Supp. at 20.) This newly discovered evidence is irrelevant, immaterial and does not undercut or affect the overwhelming evidence that Commander Lundy was a federal police officer or that Commander Lundy was performing his official duties and acting under color of his official authority when he encountered Defendant.

### C. 2004 Federal Protective Service Operational Order

Again, through the discovery process in his civil action, the defendant obtained a 2004 Federal Protective Service Operational Order. (Mot.Supp. at 23.) Reading the plain language of this Operational Plan, it clearly pertains to a "safety and speed enforcement program." (Mot.Supp at 23.) In other words, not surprisingly, the 'plan' involves some type of 'operation.' The document states that "[t]he shift supervisor will determine the time(s) and locations that *the program* will be deployed." (*Id*. at ¶ 3 (emphasis added).) *The program* requires that multiple office**r**s participate in a pre-plan "briefing." (*Id*. at ¶ 1) There was no testimony or other evidence suggesting that Defendant was contacted during or in relation to a "safety and speed enforcement program" as described in the Operational Order. Therefore, the Operational Order is completely irrelevant to the case at bar.

Additionally, with respect to Commander Lundy's decision to run radar on vehicles exiting the Denver Federal Center at the time he stopped the Defendant on April 10, 2010, after repeatedly objecting during the trial to any questioning of Commander Lundy about why he was operating radar that day, the defendant stated, "Your Honor, we -- the defense will stipulate that the original stop was lawful." (Trans. 16:20-23.) The court thereafter prohibited the government from inquiring further about Commander Lundy's traffic regulating activities that day. Defendant, having stipulated in order to avoid the examination into whether Commander Lundy

8

was authorized to be stopping cars for speeding that day, cannot now be heard to argue that Commander Lundy's activities with respect to running radar on potentially speeding vehicles was not in accordance with a six-year old Operational Plan directed at a "safety and speed enforcement program."

None of the defendant's newly discovered evidence presented to the court is either material to the principal issues involved in the criminal case or of such a nature that in a new trial it would probably produce an acquittal. With respect to the GA Position Handbook, the evidence cannot even be considered "newly discovered." Further, none of the evidence qualifies as *Brady* material which should have been produced by the government pre-trial. For all the reasons set forth herein

It is **ORDERED**

Defendant's Motion for a New Trial [Doc. No. 50] is **DENIED**.

Dated this 9th day of October, 2013.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge